[Civ. No. 52292. Second Dist., Div. Five. Sept. 11, 1978.]

CITY OF LOS ANGELES, Plaintiff and Appellant, v.
H. R. SHERWOOD et al., Defendants and Respondents.

**COUNSEL**

Burt Pines, City Attorney, Thomas C. Bonaventura, Assistant City Attorney, and Pedro B. Echeverria, Deputy City Attorney, for Plaintiff and Appellant.

A. Perry Insel, Nossaman, Krueger & Marsh and James A. Hamilton for Defendants and Respondents.

## Opinion

**HASTINGS, J.**—This is an action to collect business taxes which the plaintiff, the City of Los Angeles (City), contends are owed it by the defendants. After a nonjury trial, judgment was entered for the defendants, and the City appeals.

Defendants are three medical doctors who formed a corporation called Vendunn Company (Vendunn). In 1951, Vendunn purchased land and constructed a medical building. The defendants set up their individual practices in this building and leased office space to other doctors.[1] It was defendants' intention that the building would house most every medical specialty so that the nearby community would have available comprehensive medical care under one roof. All the doctors practice individually but share operating costs. All receipts from the doctors' patients are collected by the defendants and deposited in a clearance account. The doctors receive a certain percentage of their receipts out of this account, another percentage is allotted for rent paid to Vendunn and the remainder of the receipts are deposited into the Sherwood-Trimble Special Business Account (Special Business Account). (See fn. 3, *infra.*)

The City claims that defendants are engaged in a business as defined by section 21.190 of the Los Angeles Municipal Code (LAMC).[2] This section taxes every person engaged in any business trade as an independent contractor who is not specifically taxed by other provisions of the LAMC. The tax is measured by the gross receipts of the trade, which in this case would be the monies deposited in the Special Business Account.

The defendants relied on a specific exemption afforded by section 21.190, subdivision (c)(6), which excludes from gross receipts of persons acting as agents or brokers, receipts *"other than* [1] receipts received as commissions or fees earned, or [2] *charges of any character made or compensation of any character received for the performance of any service as agent or broker . . . ."* (Italics added.)

The trial court found defendants were engaged in business within the purview of the LAMC, and that they were agents of the doctors, but that

---

[1]To avoid confusion, any reference to "doctors" means all of the individual doctors, including defendants, who are tenants in the medical building.

[2]Unless otherwise stated, all references to code sections pertain to the Los Angeles Municipal Code.

monies received by them through the Special Business Account,[3] were not received as commissions or as compensation for the performance of any service as agent or broker, thus untaxable under section 21.190, subdivision (c)(6). The basis for this ruling was the court's determination that defendants "paid out (the monies) on behalf of the Doctors. . . ."

The trial court's finding (memorandum of intended decision) that defendants *were* engaged in a business within the meaning of LAMC is extremely important. The facts support this conclusion.[4] Therefore, the only issue on appeal is whether the facts support the trial court's finding that the monies received by the defendants were exempt from the tax for the reasons stated. Defendants claim there is substantial evidence to support the judgment and therefore we must affirm. For the reasons, hereinafter stated, we disagree and reverse the judgment.

Section 21.03 imposes a business tax upon certain businesses. Under section 21.190 independent contractors are taxed upon their gross receipts. Such receipts are defined in subdivision (a) of section 21.00 as including: ". . . the total amount charged or received for the performance of any act, service or employment of whatever nature it may be, . . . without any deduction therefrom on account of . . . labor or service costs . . . losses or any other expenses whatsoever . . . ."

If we stop here, it is clear that all receipts in the Special Business Account (the 20 percent of the doctors' gross fees) would be subject to the tax. ■ Defendants argue, however, that because all, or most all the monies received were spent by them for services furnished the doctors by nurses, technicians, receptionists, bookkeeping and clerical staff, etc., and for rental equipment, that these receipts are excluded from tax by section 21.190, subdivision (c)(6). This is incorrect. The principal type of receipts

[3]Approximately 20 percent of the doctors' gross fees was deposited with this account each month. The city bases its tax on these gross receipts. The tax for the years in question, 1969, 1970 and 1971, totaled $4,120.24.

[4]The principal supporting facts are: Defendants share equally in any profits or losses. They were responsible for paying payroll obligations and expenses if the 20 percent charged the doctors was insufficient to meet them. In one of the three years in question, there was a $3,000 profit and each defendant received $1,000. Rent paid on some of the equipment used by the doctors was owned by the defendants. The services rendered by defendants could be very attractive to a doctor renting space in the defendants' building, thus assuring higher than average occupancy.

At oral argument before this court some doubt was expressed about this finding and defendants argued that they were not conducting a business. We continued the matter for further briefing on this issue. Defendants' supplemental brief does not persuade us that the trial court's finding was in error.

excluded are monies received by agents who, in turn, must purchase specific items ordered by the client. Examples are travel agents who purchase airline tickets, lodging, etc., for the customer, and stockbrokers who purchase investments. (See Ordinance No. 149,503.) The 20 percent charged the doctors by defendants is for services and equipment provided by them through their business. In other words, they are meeting their own obligations for payroll and expenses. The record shows that all the employees paid through this fund are employees of defendants. They hire them and fire them. They pay their salaries, withhold their income tax and provide workers' compensation insurance and unemployment insurance.[5]

■ The facts demonstrate that defendants were independent contractors and not agents for the doctors. The chief characteristic of the agency is that of representation, the authority to act for and in the place of the principal for the purpose of bringing him or her into legal relations with third parties. (1 Witkin, Summary of Cal. Law (8th ed., 1973) Agency and Employment, § 4, p. 646; *Marsh & McLennan of Cal., Inc.* v. *City of Los Angeles,* 62 Cal.App.3d 108, 117 [132 Cal.Rptr. 796].) The only instance in which defendants arguably represent the doctors is in billing and collecting amounts due from patients. However, this is purely an administrative or mechanical act involving no representation of the doctors by respondents.

The direction and control of defendants' employees by the doctors does not aid defendants' arguments. At most, it supports a "general-special" employment situation. In *Independent Casting-Television, Inc.* v. *City of Los Angeles,* 49 Cal.App.3d 502 [122 Cal.Rptr. 416], the taxpayer was an agency that supplied "extra" actors to motion picture producers. The agency billed the producers and received payment from them for the wages paid to the extras plus an amount intended to cover payroll taxes, fringe benefits, workers' compensation insurance premiums, and a service charge. Taxpayer treated the extras as its employees for state and federal tax purposes, workers compensation and fringe benefits. In essence, the taxpayer acted in a fashion consistent with its employment of the extras and its supplying their services to the producers. Taxpayer contended that the amounts received for the extras' wages, payroll taxes and other costs incidental thereto were not gross receipts. The taxpayer argued that the extras were not its employees because the producer exercised control over

---

[5]It is true that the doctors had full range of choice in their selection of secretaries and nurses and defendants would usually discharge or transfer an employee if requested to do so by a dissatisfied doctor; however, the final decision rested with the defendants.

them on the job and because the arrangement was required by administrative convenience. Answering these contentions, the court, at pages 508-509, stated: "It is not significant that the extras are special employees of the producer during their work (see 2 Witkin, Summary of Cal. Law (8th ed.) Workmen's Compensation, § 91) so long as they are also employees of Taxpayer which supplied their services to the producers. It is the latter fact to which the incidents of the Los Angeles city license tax attaches by reason of section 21.00 and 21.190. It is the fact that Taxpayer meets its own payroll and incidental expenses and not the technicalities of the joint employment relationship that results in the payments from the producers being includable in taxpayer's gross receipts. [¶] Nor can Taxpayer escape the tax consequences of the plan of operation adopted by it because the plan is sound in a business sense. Tax consequences follow what is done irrespective of motivation. If good business management dictates that a particular mode of operation be employed, Taxpayer is in no position to complain that the economies of operation attained by that mode are offset to a degree by the tax which the law imposes upon it. Taxpayer, after all, determined to treat the extras as its employees and to bill the producers for a variety of items including not only direct wage expense but also a negotiated figure for various incidental expenses and a fee for its services. Having done so, it cannot escape the tax consequences which do not permit it to deduct its own payroll and incidental expenses."

Also in point is *Rexall Drug Co.* v. *Peterson,* 113 Cal.App.2d 528 [248 P.2d 433], where Rexall, a parent corporation, furnished accounting, financial, personnel, legal, executive managerial and directive services to its wholly owned subsidiaries and charged each subsidiary its proportionate share of the cost of these services but no profit, the tax was sustained. The City claimed that such charges were taxable gross receipts under the same section 21.190 involved herein. Rexall contended on several grounds that the charges did not constitute gross receipts. The court rejected Rexall's contentions on the basis that Rexall was providing services to separate legal entities and the charges collected from the subsidiaries went to meet Rexall's own expenses in rendering such services.

*City of Los Angeles* v. *Meyers Bros. Parking System, Inc.,* 54 Cal.App.3d 135 [126 Cal.Rptr. 545], relied upon by defendants is clearly

distinguishable, and does not mandate an affirmance. The facts of our present case show the court erred as a matter of law.

The judgment is reversed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied October 5, 1978, and respondents' petition for a hearing by the Supreme Court was denied November 9, 1978.