**CENTRAL COOLING & SUPPLY COMPANY, Petitioner,**

v.

**DIRECTOR OF REVENUE, STATE OF MISSOURI, Respondent.**

No. 63712.

Supreme Court of Missouri, Division No. 2.

Dec. 3, 1982.

Motion to Dismiss Motion for Transfer to En Banc May 4, 1983.

Richard Monaghan, Kansas City, for petitioner.

John Ashcroft, Atty. Gen., Bruce Farmer, Asst. Atty. Gen., Jefferson City, for respondent.

**HIGGINS, Judge.**

■ Central Cooling & Supply Company seeks reversal of a decision of the Administrative Hearing Commission which affirmed the Director's assessment of sales and use tax against Central on transfers of goods between it and its parent, Johnson Furnace Company. The decision rests on a determination that Central and Johnson are separate corporate entities and that the transfers of goods between them constituted taxable sales. Central contends they are not separate entities because Central is "a nominee or business conduit of Johnson." *See Blackwell Printing Co. v. Blackwell-Wielandy Co.,* 440 S.W.2d 433 (Mo.1969). Central asserts it exists for the sole purpose of acting as a purchasing agent for Johnson to argue that the separate corporate entities should be disregarded and it and Johnson should be treated as one corporation. Thus the question is whether Central and Johnson are separate corporate entities for sales and use tax purposes.[1] Affirmed.

Central Cooling & Supply Company is a wholly-owned, self-styled "paper" subsidiary of Johnson Furnace Company. Central is engaged in the business of selling heating and cooling supplies in the Kansas City area and in purchasing goods from various suppliers for its parent corporation, Johnson, which is engaged in the construction business.

Central was incorporated to purchase supplies from various suppliers and manufacturers who refused to sell directly to contractors, such as Johnson, engaged in other than wholesale operations. Purchase orders to various suppliers were issued under the name Central Cooling & Supply

Company and the subsequent billings were made to Central; the bills were then paid by Johnson. Central has no employees but is a separately organized Missouri corporation, duly registered with the Secretary of State.

Central asks this Court to "pierce its corporate veil" and find that any transactions between it and Johnson are no more than interdepartmental transfers. In support, Central cites cases where the court disregarded a subsidiary's separate status and treated it and the parent as a single entity. *Acme Precision Products, Inc. v. American Alloys Corporation,* 422 F.2d 1395 (8th Cir. 1970); *Osler v. Joplin Life Insurance Co.,* 164 S.W.2d 295 (Mo.1942). In those cases the court ignored separate corporate entities in order to prevent a fraud, wrong or injustice, and "pierced the corporate veil" to impose liability on the corporation, not to bestow an advantage; they are not persuasive on the issue in this case.

Persuasive are those cases where the court examined the notion of piercing the corporate veil in taxation contexts. The United States Supreme Court held in *Moline Properties, Inc. v. Commissioner of Internal Revenue,* 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943):

The doctrine of corporate entity fills a useful purpose in business life. Whether the purpose be to gain an advantage under the law of the state of incorporation or to avoid or to comply with the demands of creditors or to serve the creator's personal or undisclosed convenience, so long as that purpose is the equivalent of business activity or is followed by the carrying on of business by the corporation, the corporation remains a separate taxable entity.

*Id.* at 438–439, 63 S.Ct. at 1133–1134.

■ The notion of piercing the corporate veil has arisen before in Missouri although

---

1. Jurisdiction on this question alone is doubtful; however, the petition for review asserted that the appeal also involved (2) whether the sale of goods in Kansas is subject to Missouri sales tax under § 144.020, *et seq.* RSMo, and hence involves construction of a revenue law; (3) whether such imposition violates the "Commerce Clause"; (4) whether sales in Kansas are

exempt, and hence construction of a revenue law. Petitioner concedes that (2), (3) and (4) "apply only if the Court determines that the Administrative Hearing Commission erred in its decision." Jurisdiction is retained in the interest of timely adjudication. *Foremost-McKesson, Inc. v. Davis,* 488 S.W.2d 193, 196 (Mo. banc 1972).

not in the context of this case.[2] In those cases, the courts have recognized that ordinarily two separate corporations are to be regarded as wholly distinct legal entities, even though the stock of the one is owned partly or entirely by the other. They have recognized instances where one corporation is so controlled and its affairs so conducted as to transform it into the adjunct or alter ego of another corporation, and the question arises whether to retain or disregard the corporate fiction in order to obtain the correct result. In such a case, the test is whether the arrangement between the two corporations is being employed for a proper purpose. *May Department Stores Co. v. Union Electric Light & Power Co.,* 341 Mo. 299, 107 S.W.2d 41 (1937). If the purpose served by the arrangement is fair and lawful, then legal forms and relationships are to be observed and the case determined upon the basis of separate and individual corporate existence. *Phelps v. Missouri-Kansas-Texas Railroad Co.,* 438 S.W.2d 181 (Mo.1968), *cert. denied,* 394 U.S. 955, 89 S.Ct. 1298, 22 L.Ed.2d 494 (1969). There is no suggestion that the separate incorporation of Central and Johnson was for any reason other than the proper purpose of gaining a business advantage by obtaining supplies at wholesale prices.

■ Courts in other states have dealt with this specific issue or analogous issues and have decided that sales from the subsidiary to the parent (or vice versa) do constitute sales within the meaning of a sales tax law or similar statute. That two corporations, parent and subsidiary, are commonly owned and operated does not eliminate sales tax consequences as to property transferred from one to the other. Annot., 64 A.L.R.2d 769 (1959). The corporate form should not be ignored, and if there is a transaction that would have been subject to the imposition of a sales tax if the transaction had been between two separately owned corporations, the common ownership of the two corporations is irrele-

vant. *Commissioner of Revenue v. Globe Automatic Vending Co., Inc.,* 421 N.E.2d 1213, 1214 (Mass.1981). Ownership of capital stock in one corporation by another does not itself create identity of corporate interest as between the two. In tax matters a corporation and its stockholders are deemed separate entities. *Rexall Drug Co. v. Peterson,* 113 Cal.App.2d 528, 248 P.2d 433 (1952). The Illinois Supreme Court noted a parent and subsidiary corporation should not be deemed as so integrated that transactions between them were not taxable sales within the contemplation of Illinois' Retailers' Occupation Tax Act:

> The doctrine of corporate entity is one of substance and validity; it should be ignored with caution, and only when the circumstances clearly justify it. The theory of the alter ego has been adopted by the courts to prevent injustice, in those cases where the fiction of a corporate entity has been used as a subterfuge to defeat public convenience or to perpetrate a wrong; it should never be invoked to work an injustice, or to give an unfair advantage.

*Superior Coal Co. v. Department of Finance,* 377 Ill. 282, 36 N.E.2d 354, 360 (1941).

■ Under the foregoing analysis, the transactions between Central and Johnson are subject to tax pursuant to § 144.020 RSMo Supp.1982. Central and Johnson are organized as separate corporate entities and registered with the Secretary of State of Missouri; purchases of supplies are made by Central using purchase orders issued under its own name. Billings by the suppliers are made to Central. The supplies go to Johnson for use in its construction business and Johnson pays for all purchases made by Central. This separate corporate organization allows Johnson to enjoy a distinct business advantage by enabling it to obtain supplies at wholesale prices, a benefit not available to Johnson except for the separate existence of Central. Central and Johnson

---

**2.** Note *Simmons Hardware Co. v. City of St. Louis,* 192 S.W. 394 (Mo.1916) where this Court held that the parent company was responsible for an occupation tax on sales at cost to its subsidiaries.

were organized as separate corporate entities for a proper business purpose. There is no basis for ignoring this separate corporate existence to permit Central to avoid tax liability and gain an unfair advantage over other separately owned corporations.

The decision of the Administrative Hearing Commission is affirmed.

SEILER, J., concurs.

WELLIVER, P.J., dissents in separate dissenting opinion filed.

WELLIVER, Presiding Judge, dissenting.

I respectfully dissent.

At oral argument we were informed that appellant, using checks from its parent corporation, had paid Kansas sales tax on all items except those exempt from taxation under Kansas law. I cannot be a party to any imposition of double sales tax, which ultimately must be paid by the consumer-owner who has contracted for the construction. There is not even a suggestion in the record that appellant, the intermediate wholly owned corporation, was created or used for the purpose of tax evasion.

The issue of separate corporate identities was first interjected by the Administrative Hearing Commission. Because the record before us is woefully deficient as regards the amount of sales tax already paid and upon which items it has been paid, this case should be reversed and remanded for further findings of fact by the Administrative Hearing Commission to assure that we as a Court may protect the consuming public from the imposition of double sales taxes.