BRADLEY, Judge.
This is a sales tax case.
Capital City Asphalt, Inc., a manufacturer, seller, and applier of asphalt plant mix, was incorporated in 1975. This corporation had two asphalt batch plants. In 1978 the stockholders-directors of Capital City organized a separate corporation, Montgomery Asphalt Company, Inc., for the acquisition and management of a third batch plant at Hunter Station. Montgomery Asphalt manufactures and sells asphalt but does no application work.
In 1981 the State Department of Revenue made an examination of Capital City’s books and records covering the period from April 1, 1978 through March 31, 1981. The State examiners, in making the examination for sales tax, determined that Capital City had made errors in reporting the amount of tax due on asphalt manufactured by it and withdrawn for use on paving contracts performed by it. Also during that same period, certain asphalt manufactured by Montgomery Asphalt was invoiced to Capital City at a standard cost, the cost of raw materials plus the direct and indirect *1289 cost of manufacturing, and was used in fulfilling Capital City’s contracts. In making its assessments for sales tax on the asphalt transferred from Montgomery Asphalt to Capital City, the State based the sales tax due on the amount paid by Capital City to its sister corporation. The assessments, six in all, also covered additional taxes due several county and municipal governments for which the state is the collecting agent.
Capital City contended that it and Montgomery Asphalt, although separate corporations, acted as a unit in manufacturing, supplying, and applying the asphalt mix and that the additional sales tax on the asphalt plant mix in question should have been computed only on the cost of the ingredients that became a part of the mix. § 40-23-l(b), Code 1975. Capital City wanted the asphalt mix in question to be treated the same as that which it manufactured and withdrew for use.
Capital City paid the taxes based upon the cost of the ingredients of the mix. The State made the assessments final after allowing credit for the payments made by Capital City. Pursuant to section 40-2-22, Code 1975, Capital City appealed the assessments to the Montgomery County Circuit Court. The appeals were consolidated.
A trial was held and the court entered judgment in favor of the plaintiff, Capital City. The State filed a motion to alter or amend the judgment and subsequently filed a motion to alter, amend, or vacate the judgment. Following the trial, the parties stipulated that Capital City owed certain local assessments. The State’s posttrial motions as to the other assessments were denied. The State brings this appeal.
Capital City contends, as it has at all levels of this contest, that it and Montgomery Asphalt together are only one person for sales tax purposes. Person is defined in the sales tax section of the Alabama Code as follows:
“Person or Company. Used interchangeably, includes any individual, firm, copartnership, association, corporation, receiver, trustee or any other group or combination acting as a unit and the plural as well as the singular number, unless the intention to give a more limited meaning is disclosed by the context.” (Emphasis added.)
§ 40-23-l(a)(l), Code 1975. Plaintiff asserts that the two corporations were acting as a unit in the asphalt manufacturing, selling and application business and were thus a single person for purposes of the sales and use tax sections of the code.
To support its “acting as a unit” argument, plaintiff presented at trial evidence as to the nature of the two corporate entities’ operations. The testimony showed that the two corporations had the same stockholders, officers, and directors. The manufacturing process for the two corporations at the three batch plants was identical and the same person supervised all three plants. Employees and equipment of the three plants were used interchangeably as the need arose. Accounting and bookkeeping procedures were identical for both corporations. The two entities were treated as one business for federal income tax purposes. More of this type testimony was offered in plaintiff’s effort to prove Montgomery Asphalt and it should be treated as one.
Based on this evidence, the trial court determined that, factually, Capital City and Montgomery Asphalt were acting as a unit and, therefore, one taxable person. However, we must determine whether as a matter of law two separately incorporated entities can be one person for sales tax purposes.
The State argues that Capital City and Montgomery Asphalt were separate corporations, each holding a separate sales tax license, and therefore, each individually is a “person” as defined by section 40-23-1(a)(1), Code 1975. If the two corporations formed a unit by their actions, this unit would result in a third taxable person. Any asphalt distributed by Montgomery Asphalt to this third person unit would be a sale subject to sales tax.
*1290 Although this is a case of first impression for this state, other jurisdictions have dealth with issues similar to the one now before this court.
The West Virginia tax code has a definition of “person” that is very similar to the definition in our code. This section provides:
“[T]he term ‘person’ or the term ‘company’ herein used interchangeably, includes any individual, firm, copartnership, joint adventure, association, corporation, trust or any other group or combination acting as a unit, and the plural as well as the singular number, unless the intention to give a more limited meaning is disclosed by the context.”
W.Va.Code § 11-13-1 (1974).
In Southern States Coop. v. Dailey, 280 S.E.2d 821 (W.Va.1981), the West Virginia Supreme Court examined the aforementioned definitional section in a case involving an agricultural cooperative association and its affiliated cooperatives. In an effort to avoid paying a business and occupation tax, the cooperative argued that the local affiliates were simply a part of a unitary distribution system. Although the cooperative association and its local affiliates were separate corporations, those separate entities were acting as a unit.
The court rejected this argument and held that the cooperative and its affiliates fall individually into the category of persons for taxpaying purposes.
“The designation ‘group or combination acting as a unit’ contained in W.Va.Code § 11-13-1 is used to include business configurations not otherwise specifically denominated. When separate corporations fall into specific designations of taxable ‘persons’ ... they do not constitute a ‘group or combination acting as a unit,’ despite the fact that they form part of a cooperative distribution system.”
Southern States Coop. v. Dailey, supra. We agree with their interpretation. The West Virginia court further stated that their separate corporate structure should not be disregarded merely on a showing that one corporation is owned by the other or that they share common officers.
The Colorado Supreme Court in Montgomery Ward & Co. v. State, Colo., 628 P.2d 85 (1981), affirmed the district court decision that Montgomery Ward and its separately incorporated credit corporation were not one person for sales tax purposes. This Colorado case involved a sales tax on the sale of Montgomery Ward’s accounts receivable to its wholly-owned subsidiary credit corporation. Montgomery Ward argued that it and the credit corporation were a single person under the sales tax statutes. In rejecting this argument, the district court considered the fact that Montgomery Ward and the credit corporation were separate corporations and that the credit corporation was not the exclusive purchaser of Montgomery Ward’s accounts receivable. See also White Motor Corp. v. Kosydar, 50 Ohio St.2d 290, 364 N.E.2d 252 (1977); Pure Oil Co. v. State, 244 Ala. 258, 12 So.2d 861 (1943); 68 Am.Jur.2d Sales and Use Taxes § 97 (1973); Annot., 64 A.L.R.2d 769 (1959).
Also in the Southern States Coop, decision, the court pointed out that Southern States and its cooperatives chose to do business as separate corporations and in making this choice they received the advantages and benefits of operating as corporations. “Having taken advantage of the benefits of incorporation, a corporation cannot decline to accept the liabilities of the corporate form in order to reduce the incidence of taxation.” Southern States Coop. v. Dailey, supra. See also Mercedes-Benz v. State Board of Equalization, 127 Cal.App.3d 871, 179 Cal.Rptr. 758 (1982).
We note in this case that the stockholders, directors, and officers of Capital City consciously selected the separate corporate form for the Hunter Station batch plant. According to the record, this decision was made in an effort to avoid certain union contracts when purchasing the batch plant from Vulcan Materials. They have reaped *1291 the benefits of incorporation and cannot now disclaim their corporate form to reduce the incidence of taxation. Moreover, Capital City was not the exclusive purchaser of Montgomery Asphalt output.
We conclude therefore that the designation “any other group or combination acting as a unit” contained in section 40-23-l(a)(l), Code 1975, is used to describe and include business affiliations not otherwise specifically described in said section.
This case is reversed and remanded to the Circuit Court of Montgomery County for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
WRIGHT, P.J., and HOLMES, J., concur.
BRADLEY, Judge.